SAUNDERS v. HANNUM et al.

(Circuit Court, D. Massachusetts. July 18, 1902.)

No. 1,502.

**1. PATENTS—NOVELTY—BED FRAME.**
    The Burton patent, No. 366,566, for a spring bed frame, claim 2, covering "a metallic bed frame having its ends upturned, and also curved or arched outward, as described," construed in connection with the specification, does not include as one of its elements the making of the end rails elastic or resilient, nor disclose any new feature, and is void for lack of patentable novelty.

In Equity. Suit for infringement of letters patent No. 366,566, granted to Burton, July 12, 1887, for a metallic spring bed frame. On final hearing.

Causten Browne and Alex. P. Browne, for complainant.

Milton E. Robinson, for defendants.

COLT, Circuit Judge. This suit relates to the Burton patent, No. 366,566, dated July 12, 1887, for improvements in metallic spring bed frames. The defendants are charged with infringement of the second claim, which reads as follows: "A metallic bed frame, having its ends upturned and also curved or arched outward, as described."

All the elements of this claim are found in the prior art,—metallic bed frames, upturned ends, and outwardly curved ends. If there is any patentable novelty in the claim, it must be by reason of some novel feature set forth in the specification. The complainant contends that the specification does disclose a new and important improvement not found in any prior patents, namely, an "outwardly bowed elastic or resilient end rail which both supports the fabric [bed bottom] and automatically takes up the slack." It is upon this feature of the patent the complainant relies to meet the defense of noninvention and anticipation; and it is not seriously questioned, if this feature is not disclosed in the patent, that claim 2 must be held void for want of patentable novelty.

We are met, then, at the threshold of this case with the important question of the proper interpretation of the Burton patent. The specification is short, and, in my opinion, its meaning is clear and unmistakable. The patentee says:

"The objects in part of my invention are not only to provide a very strong metal frame for holding and supporting the fabric or springs which constitute the bed bottom, but one in which such fabric or springs shall be raised above the sides of the frame. Other advantages of my new construction will hereinafter more fully appear."

So far, at least, the language of the specification is plain. "The objects in part of the invention" are a strong metal frame, and one in which the bed bottom is raised above the sides of the frame. After reference to the five figures of the drawings, the specification proceeds:

"Usually metal bed frames are all in the same plane from end to end, such frames not being, as in my invention, in a plane materially below that of the ends of the frame."

This is another reference to one of the objects of the invention already mentioned.

"In my improvement [the patentee continues] the frame A, which is preferably cylindrical and solid, or tubular in cross-section, though it may be made of bars of any other desired form in its cross-section,—such, for instance, as shown in Fig. 4,—may be in one or more connected pieces; but for greater strength and durability I prefer it in one piece, bent substantially to the shape shown in Fig. 1, the extremities being united by coupling-nuts or welding, or in any preferred way. The ends, b, of this frame are then turned upward, as shown at c in Fig. 2, the object of these upturned ends being to raise the fabric, sacking, springs, or other material composing the bed bottom above or away from the sides, d, and this bed bottom being attached, as desired, to the ends and sides of the frame, or to the ends, b, only, such ends and the sides, if desired, being provided with holes, e, or equivalent means— such as hooks, buttons, or knobs—for attaching the bottom to the frame. This feature of raised ends leaves the space beneath the side edges of the bed bottom clear and free, offering no obstacle to the proper play of the bottom or to getting in or out of the bed."

Having thus stated the advantages of the raised or upturned ends, the patentee proceeds to describe the advantages of having the ends curved or arched; and it is in this part of the specification the complainant finds disclosed and described an outwardly curved resilient end rail, which automatically takes up the slack:

"Each of these upturned ends has also an outward curve or arch, as seen at f, and which not only affords great strength to resist the lengthwise strain of the bed bottom, caused by the weight of the person or persons lying thereon, but they perform another duty, that of preventing the ends from being pulled and bent inward."

End rails are either curved or straight, and what the patentee here evidently means is that straight end rails are weak, and their ends liable to be pulled and bent inward, and that, by making them with an outward curve or arch, not only is strength added, but any pull or bend inward is prevented. There is no hint, suggestion, or intimation of any spring or resilient action in the end rails for automatically taking up the slack or for any other purpose. The specification proceeds:

"Furthermore, by reason of the described form given to the ends, when the end pressure or lengthwise strain is very great the tendency is to spread the sides somewhat farther apart, and when the fabric or bottom is fastened or moored to these sides they are held solid and firmly, and their further separation prevented, thus making it impossible for the ends to pass the 'center' and bend inward. This enables me to use much lighter material in the construction of the frame than would otherwise be necessary, and at the same time giving great strength."

This paragraph refers to the advantages which result from mooring the bed bottom to the sides of the frame. When the end pressure or lengthwise strain is the greatest, there is a tendency, by reason of the form given the ends, to spread the sides further apart, but by fastening the sides to the bottom in the manner previously described in the specification the sides are held firm and solid; the effect of this also being to hold the ends firm, and thus render it impossible for them to "pass the 'center' and bend inward."

Whatever merit there may be (a point I do not decide) in a metallic spring bed frame having outwardly curved resilient end rails for automatically taking up the slack, I am unable to find any such concep-

tion or disclosure either described or suggested in the Burton patent, or any language from which it can be reasonably inferred that the patentee ever had any such conception, much less intended his patent to include this feature of novelty. From a very careful study of the instrument, I cannot resist the conclusion that the purpose of the outwardly curved arch was strength and inflexibility, and not resilience. It was the unyielding resistance of the arch, and not any springing or rebounding resistance, which the patentee plainly had in mind.

In the spring bed frame art, any spring or resiliency in the end rails seems to have been regarded as a defect to be guarded against; and, if Burton discovered that this feature was an advantage of such importance that he wished to cover it by a patent, it is incredible that he should not have referred to it specifically in the specification and claims. If such were the fact, the discovery of this new and important feature would not have been left to the ingenious interpretation of the specification by the complainant.

As the court cannot accept the complainant's construction of the Burton patent, it follows that claim 2 must be held void for want of patentable novelty.

Bill to be dismissed, with costs.